ROSE FOLK AND VALENTINE FOLK, PLAINTIFFS-RE-
SPONDENTS, v. HACKENSACK WATER COMPANY, DE-
FENDANT-APPELLANT.

Argued October 4, 1938—Decided November 12, 1938.

Before Justices TRENCHARD and PARKER.

For the appellant, *Samuel W. Zerman* (*William J. Mor-
rison, Jr.,* of counsel).

For the respondents, *Nathan Baker.*

PER CURIAM.

The female plaintiff, while walking along a concrete side-
walk near a street corner in North Bergen, fell because her
foot caught in an appliance called in the testimony a "curb
box" which had been installed by the appellant company and
which, at the time of the accident, projected somewhat above
the general surface of the sidewalk. The evidence was con-
tradictory as to the extent to which it so projected, but that
was a matter of fact to be settled by the trial court on the
evidence. Plaintiffs claimed that it extended up about three
inches and there was evidence to support this. The plain-
tiff's husband joined *per quod* and the trial, had without a
jury, resulted in a judgment of $150 in favor of the wife and
$50 in favor of the husband. The defendant appeals and
the reasons given are, that the court denied a motion for
judgment at the close of the entire case, and that the court
rendered a judgment for the plaintiffs. The claim on behalf
of the plaintiffs was, generally, that the curb box had been

installed by the defendant and was maintained by it; that its projection above the sidewalk level was due to the negligence of the defendant and, furthermore, that it amounted to a nuisance. Defendant admitted having installed the curb box some twelve or thirteen years previously, but claimed that at the time of the accident the curb box was not its property, and that it had no control over it and was charged with no responsibility in regard to its maintenance. We conclude, after a careful examination of the evidence, that the defendant showed the following facts without substantial contradiction:

1. That at the time of the installation of the box there was no sidewalk, but that it was set at the sidewalk level as furnished by the city engineer.

2. That at the time of such installation, the property abutting the sidewalk at this point was a vacant lot, and was a vacant lot at the time of the accident; also, that at the time of the accident it was the property of the municipality.

3. That when the sidewalk was laid by the municipality, it was laid at the proper level and flush with the top of the curb box.

4. That over a period of years the sidewalk at this point had settled due to the condition of the soil and that this resulted in the curb box protruding slightly above the sidewalk level.

5. That the curb box was installed by the defendant company in anticipation of the laying of the sidewalk as part of a general plan, and with a view of future connection with any building that might be erected on the lot in question, but that no such building was ever erected.

6. That this curb box, like the others in the neighborhood, had been installed by the defendant primarily under an arrangement with the municipality at a cost of $18.27, which was paid at the time by the municipality, and the latter becoming the owner of the curb box and connection, and the water company ceasing to have any interest in it or right over it except that in case it should spring a leak, the water company, to save loss of water, was privileged to make proper repairs in protection of its water.

7. The uncontradicted testimony of the city engineer, who was such previous to the installation of the curb box and had been such ever since, was that the financial practice in regard to the cost of this and other curb boxes was as follows: the cost was charged by the water company to the municipality, which paid it and became the owner of the appliance as already stated. Next, the municipality assessed the cost so paid against the property owner who thereby became the owner of the curb box. If the owner neglected to build on the property, this status remained. If he did build and there was a water connection with his building established, the water company would resume ownership of the curb box, pay back the cost of the curb box to the town, and the town would then credit the same amount back to the owner. In the present case this had never happened because, as has been stated, no building was ever erected, and the town became the owner of the lot in some way not shown by the evidence; presumably by tax sale or the like. It was testified definitely, without objection, that the town did own the lot at the time of the accident.

In view of this evidence which, as we have said, was not contradicted or impeached in any substantial way, the facts appeared to be definitely settled that at the time of the accident the water company was not the owner or in control of the curb box and had not been for some years; that it was the property of the town; that the water company was in no way responsible for the settling of the sidewalk; and, in fine, that it was not charged with any duty of maintenance or care in regard to the physical situation there existing.

There was testimony that at the top of the curb box was a casting bearing the name of the Hackensack Water Company, but this is deemed of no evidential value in the case. There was also testimony, contradicted but still testimony, that after the accident two men were seen working on the curb box to lower it to the then grade of the sidewalk and that near by there stood a truck with the name of the Hackensack Water Company on it. But as we view the matter, this raised no substantial presumption either of ownership or

negligence in management. Our conclusion is that on the evidence there was no real question of fact to be settled by the trial court which would in any way justify a judgment for the plaintiff.

The judgment is therefore reversed.